**KINGSLEY & KINGSLEY, APC**
ERIC B. KINGSLEY, Esq., Cal. Bar No. 185123
eric@kingsleykingsley.com
KELSEY M. SZAMET, Esq., Cal. Bar No. 260264
kelsey@kingsleykingsley.com
DAVID KELEDJIAN, Esq., Cal. Bar No. 309135
16133 Ventura Blvd., Suite 1200
Encino, CA 91436
Telephone: (818) 990-8300
Fax: (818) 990-2903

**DAVTYAN PROFESSIONAL LAW CORPORATION**
EMIL DAVTYAN, Esq., Cal. Bar No. 299363
support@davtyanlaw.com
5959 Topanga Canyon Blvd., Suite 130
Woodland Hills, California 91367
Telephone: (818) 875-2008
Fax: (818) 722-3974

Attorneys for Plaintiff and the Proposed Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CHRISTOPHER MASTON, an individual, on behalf of himself and others similarly situated, <br><br> PLAINTIFF, <br><br> v. <br><br> BLUESTAR REFRESHMENT SERVICES, <br><br> DEFENDANTS. | CASE NO. 17-cv-06000-JCS <br><br> [Case assigned for all purposes to Hon. Joseph C. Spero] <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date:   February 15, 2019 <br> Time:   9:30 a.m. <br> Crtrm.:  G <br> Judge:   Hon. Joseph C. Spero <br><br> *[Filed concurrently with Declaration of Kelsey M. Szamet; and [Proposed] Order]* |

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**TO THE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on date and time to be determined by the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, in Courtroom G, 15th Floor, Plaintiff CHRISTOPHER MASTON will, and hereby does, move this Court for an order granting preliminary approval of a proposed class action settlement. The terms of the settlement are contained within the Joint Stipulation of Class Action Settlement and Release filed herewith.

This motion is based on this Notice and accompanying Memorandum of Points and Authorities, the Declaration of Kelsey M. Szamet, the Joint Stipulation of Class Action Settlement and Release, Notice of Claim, [Proposed] Order Preliminarily Approving Settlement, and [Proposed] Order and Final Judgment, all filed herewith, and on such further evidence and argument as may be presented at the hearing.

Dated:  January 10, 2019                    KINGSLEY & KINGSLEY, APC


By:   /S/KELSEY M. SZAMET
                        Eric B. Kingsley
                        Kelsey M. Szamet
                        David Keledjian
                        Attorneys for Plaintiff and all others
                        similarly situated

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................1

II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND .......................2

III.   SUMMARY OF SETTLEMENT TERMS........................................................4

    A.    The Settlement Classes ...........................................................................4

    B.    Settlement Class Periods .........................................................................4

    C.    Settlement Fund .......................................................................................4

IV.    PRELIMINARY SETTLEMENT APPROVAL PROCESS ...............................6

    A.    Provisional Certification of the Settlement Classes.................................7

    B.    Settlement Administration Timeline ........................................................8

V.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................9

    A.    The Terms of the Proposed Settlement Provide Reasonable Compensation
        for Plaintiff's and Settlement Class Members' Damages .....................11

        1.    The Settlement Provides a Significant Monetary Benefit to Class
            Members ......................................................................................11

        2.    The Settlement's Financial Terms Reflect a Fair Discount From
            the Maximum Value of the Case Based on litigation Risks ....................11

    B.    The Settlement Is the Product of Serious, Arm's-Length, Informed
        Negotiations and There Are No Indications Present to Doubt Its Fairness ..........14

VI.    PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE....................15

    A.    FRCP 23(a) Requirements for Class Certification Are Met .................15

        1.    Numerosity...................................................................................15

        2.    Commonality................................................................................16

        3.    Typicality.....................................................................................16

        4.    Adequacy of Representation ........................................................17

    B.    FRCP 23(b)(3) Requirements for Class Certification Are Met .............18

        1.    Predominance...............................................................................18

        2.    Superiority....................................................................................18

i

VII.     THE PROPOSED CLASS NOTICE IS APPROPRIATE....................................................19

          A.      The Class Notice Satisfies Due Process............................................................19

          B.      The Proposed Notice Is Accurate and Informative.............................................19

VIII.    PLAINTIFF REQUESTS A FINAL APPROVAL HEARING..........................................20

IX.      CONCLUSION.................................................................................................................20

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# TABLE OF AUTHORITY

**FEDERAL CASES**

*Acosta v. Trans Union LLC*,

  243 F.R.D. 377 (C.D. Cal. 2007) ........................................................... 10

*Alberto v. GMRI, Inc.*,

  252 F.R.D. 652 (E.D. Cal. 2008) ............................................................ 7

*Alvarado v. Nederend*,

  2011 WL 90228 (E.D. Cal. Jan. 11, 2011) ............................................ 7

*Amchem Prods., Inc. v. Windsor*,

  521 U.S. 591 (1997) ............................................................................... 20

*Class Plaintiffs v. City of Seattle*,

  955 F.2d 1268 (9th Cir. 1992) ............................................................... 8

*Collins v. Cargill Meat Solutions Corp.*,

  2011 WL 837140 (E.D. Cal. Mar. 9, 2011) .......................................... 7

*Cotton v. Hinton*,

  559 F.2d 1326 (5th Cir. 1977) ............................................................... 16

*Dunford v. Am. DataBank, LLC*,

  64 F. Supp. 3d 1378 (N.D. Cal. 2014) .................................................. 15

*Ellis v. Costco Wholesale Corp.*,

  657 F.3d 970 (9th Cir. 2011) ................................................................. 14

*Gen. Tel. Co. of the SW v. Falcon*,

  457 U.S. 147 (1982) ............................................................................... 19

*Griffin v. Carlin*,

  755 F.2d 1516 (11th Cir. 1985) ............................................................. 19

*Hanlon v. Chrysler Corp.*,

  150 F. 3d 1011 (9th Cir. 1998) ....................................................... passim

*Harris v. Vector Marketing Corp.*,

  2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ..................................... 8

iii

*In re Corrugated Container Antitrust Litig.*,

    643 F.2d 195 (5th Cir. 1981) ............................................................... 12

*In re Prudential Securities, Inc.*,

    163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................... 10

*In re Syncor ERISA Litig.*,

    516 F.3d 1095 (9th Cir. 2008) ............................................................... 7

*In re Tableware Antitrust Litig.*,

    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................. 8

*In re Traffic Exec. Ass'n*,

    627 F.2d 631 (2d Cir. 1980) ................................................................ 10

*In re UTStarcom, Inc. Sec. Litig.*,

    No. C04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010) ......................................... 17

*Martens v. Smith Barney, Inc.*,

    181 F.R.D. 243 (S.D.N.Y. 1998) ......................................................... 16

*Mazza v. Am. Honda Motor Co.*,

    666 F.3d 581 (9th Cir. 2012) ............................................................... 14

*Milbourne v. JRK Residential Am., LLC*,

    No. 3:12CV861, 2016 WL 1071570 (E.D. Va. Mar. 15, 2016) ............................................. 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... 7

*Officers for Justice v. Civ. Serv. Comm'n of San Francisco*,

    688 F.2d 615 (9th Cir. 1982) ............................................................... 16

*Pataky v. Brigantine, Inc.*,

    No. 17-cv-00352-GPC-AGS 2018 WL 3020159 (S.D. Cal. June 19, 2018) ............................ 18

*Schleicher v. Wendt, No. 1:02-CV-1332-DFH-TAB*,

    2009 WL 761157 (S.D. Ind. Mar. 20, 2009) ........................................... 15

*Speaks v. U.S. Tobacco Coop., Inc.*,

    324 F.R.D. 112 (E.D.N.C. 2018) .......................................................... 18

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*Syed v. M-I, LLC*,

    853 F.3d 492 (9th Cir. 2017) ........................................................................ 14

*Thorn v. Jefferson-Pilot Life Ins. Co.*,

    445 F.3d 311 (4th Cir. 2006) ........................................................................ 15

*Torrisi v. Tucson Elec. Power Co.*,

    8 F.3d 1370 (9th Cir. 1993) .................................................................... 8, 10

*Van Bronkhorst v. Safeco Corp.*,

    529 F.2d 943 (9th Cir. 1976) .......................................................................... 9

*Welmer v. Syntex*,

    117 F.R.D. 641 (N.D. Cal. 1987) ................................................................. 19

*Yamamoto v. Omiya*,

    564 F.2d 1319 (9th Cir. 1977) ...................................................................... 10

**FEDERAL STATUTES**

15 U.S.C § 1681n(a)(1) .................................................................................... 14

15 U.S.C. § 1681b ............................................................................................... 1

15 U.S.C. § 1681p ............................................................................................. 15

**STATE STATUTES**

California Labor Code § 226(e)(2) .................................................................... 13

California Labor Code § 226(a)(8) ................................................... 1, 3, 14, 15

Code of Civil Procedure § 384(b)(3) ................................................................. 6

**FEDERAL RULES**

Federal Rules of Civil Procedure 23(a) ................................................ 17, 18, 19

Federal Rules of Civil Procedure 23(a)(4) ...................................................... 19

Federal Rules of Civil Procedure 23(b) ........................................................... 17

Federal Rules of Civil Procedure 23(b)(3) ................................................. 20, 21

Federal Rules of Civil Procedure 23(c)(2) ...................................................... 22

Federal Rules of Civil Procedure 23(c)(2)(B) ................................................. 21

Federal Rules of Civil Procedure 23(c)(3) ...................................................... 22

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Federal Rules of Civil Procedure 23(e) ................................................................. 7, 17, 22

Federal Rules of Civil Procedure 23(e)(4)(A) ............................................................ 22

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## I.  INTRODUCTION

Plaintiff CHRISTOPHER MASTON ("Plaintiff"), on his behalf and on behalf of all others similarly situated, and Defendants BLUESTAR REFRESHMENT SERVICES ("Defendant") (together with Plaintiff, the "Parties") have reached an agreement to settle this matter.  Plaintiff believes the settlement to be fair and reasonable and now seeks preliminary approval of the proposed Stipulation of Settlement ("Stipulation" or "Settlement Agreement").[1]

The Settlement Agreement provides real and valuable relief to hundreds of Defendant's present and former employees.  Plaintiff brought this action against Defendant based on Defendants' alleged violation of: 1) the Fair Credit Reporting Act; 2) failure to pay wages and/or overtime; 3) waiting time penalties; and 4) penalties under PAGA.

Plaintiff seeks preliminary approval of two proposed settlement classes (together, the "Settlement Classes") composed of and defined as follows:

> a.    All individuals who executed Bluestar Refreshment Services' Consumer Background Search Authorization and Liability Release clause at any time from October 19, 2012 through November 1, 2018 (the "FCRA Class")."
>
> b.    All persons who are employed or have been employed by Bluestar Refreshment Services in the State of California as hourly who worked one or more pay periods since October 19, 2013 and continuing through November 1, 2018 (the "California Class Class")."

During the applicable FCRA Class period of October 19, 2012 through November 1, 2018 (the "FCRA Settlement Period"), it is estimated there are approximately 189 class members; during the California Class period of October 19, 2013 through November 1, 2018 (the "California Settlement Period"), it is estimated there are 480 class members.  Declaration of Kelsey M. Szamet in Support of Motion for Preliminary Approval of Class Action Settlement ("Szamet Decl.") at ¶ 4.

The Parties have agreed to settle this matter for a total of $80,000, without reversion or discount.  The Settlement Agreement provides that members of the FCRA Class who do not opt out shall receive a settlement amount for the FCRA claim, and members of the California Class

---

[1] The Parties' Settlement Agreement is attached to the Declaration of Kelsey M. Szamet, submitted herewith as **Exhibit 1**.

who do not opt out will receive a separate settlement amount for the California claims.  Szamet Decl., ¶ 5.

This proposed settlement resolves all of the Plaintiff's and Participating Settlement Class Members' (as defined under Section I(R) of the Settlement) claims against Defendant and satisfies all of the criteria for preliminary settlement approval.  Plaintiff believes that the settlement is fair, just, reasonable, and adequate.  Accordingly, the Parties request that the Court:

1.   Provisionally certify the proposed settlement classes for settlement purposes;

2.   Grant preliminary approval of the proposed Settlement;

3.   Approve the proposed notice program and the forms proposed by the parties (collectively the "Settlement Documents");

4.   Confirm the appointment of Plaintiff Christopher Maston as Class Representative;

5.   Confirm the appointment of Eric B. Kingsley and Kelsey M. Szamet of Kingsley & Kingsley, APC as Settlement Class Counsel;

6.   Confirm the appointment of Rust Consulting, Inc. as settlement administrator;

7.   Set deadlines for mailing Settlement Documents, opting out of, or objecting to the settlement; and

8.   Schedule a final approval hearing.

## II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This class action involves two classes.  First, a nationwide class bringing claims under the Fair Credit Reporting Act ("FCRA") against Defendant for alleged failure to make proper disclosures and obtain valid authorization before obtaining a background check on Plaintiff and other class members. (Szamet Decl., ¶ 6).  Second, a California class suing for alleged failure to blend "PSP" pay, which is a non-discretionary bonus, into the regular rate when calculating overtime. (Szamet Decl., ¶ 6).

On October 19, 2017 Plaintiff filed a class action complaint against Defendant seeking relief for (1) violations of the FCRA's disclosure and authorization requirements, (2) failure to pay wages and/or overtime, and (3) waiting time penalties. (Szamet Decl., ¶ 7). Plaintiff later filed its First Amended Complaint ("FAC"), adding a claim under PAGA. (Szamet Decl., ¶ 7).

The Parties and their respective counsel have participated in extensive informal discovery and exchange of information, including time and pay data, time punch reports, payroll registers, wage statements, and the applicable consumer background check authorization. (Szamet Decl., ¶ 8).

On May 17, 2018, the Parties attended mediation with respected mediator Jeffrey Krivis, Esq., where a tentative agreement was reached. (Szamet Decl., ¶ 9). The long form agreement, title the Settlement Agreement was later executed by the Parties.  (Szamet Decl., ¶ 9).

The Parties engaged in good faith, arms-length negotiations and were able to reach a tentative settlement of the litigation, subject to finalization of a formal stipulation for resolution and the approval of the Court. (Szamet Decl., ¶ 10). The Parties have since engaged in extensive negotiations about the terms and conditions of the settlement.  The Parties have now entered the formalized Settlement Agreement for submission to the Court.   (Szamet Decl., ¶ 10, Ex. A, Settlement Agreement).

Proposed Class Counsel has conducted an investigation of the law and facts relating to the claims asserted in the litigation and has concluded, taking into account the sharply contested issues involved, the expense and time necessary to pursue litigation of the matter through trial and any appeals, the risks and costs of further litigation, the risk of an adverse outcome, the uncertainties of complex litigation, and the substantial benefits to be received by the Plaintiff and the members of the Settlement Classes pursuant to the Settlement Agreement, that a settlement with Defendant on the terms and conditions set forth in the Settlement Agreement is fair, just, reasonable, adequate, and in the best interests of the Settlement Classes. (Szamet Decl., ¶ 11). Plaintiff, on his own behalf and on behalf of the Settlement Classes, has agreed to the proposed Settlement with Defendant on the terms set forth herein.  (Szamet Decl., ¶ 11).

Discussions between counsel for the Parties, informal discovery, as well as the diligent investigation and evaluation of the claims of Plaintiff by the Parties, have permitted each side to assess the relative merits of the claims and the defenses to those claims. (Szamet Decl., ¶ 12). Based on their own independent investigations and evaluations, proposed Class Counsel is of the opinion that the consideration and terms of the settlement as described herein, considering the risk

3

of loss on class certification, the risk of loss on the merits, and the risk of a reduction in any damages sought or awarded, is fair, just, reasonable, and adequate in light of all known facts and circumstances, and is in the best interests of the Settlement Classes.  Szamet Decl., ¶ *12).

## III.   SUMMARY OF SETTLEMENT TERMS

Though detailed fully in the concurrently-submitted Settlement Agreement, the significant terms of the settlement are set forth below.

### A.  The Settlement Classes

The Settlement Classes are defined as:

a.  All individuals who executed Bluestar Refreshment Services' Consumer Background Search Authorization and Liability Release clause at any time from October 19, 2012 through November 1, 2018 (the "FCRA Class")."

b.  All persons who are employed or have been employed by Bluestar Refreshment Services in the State of California as hourly who worked one or more pay periods since October 19, 2013 and continuing through November 1, 2018 (the "California Class Class")."

Szamet Decl., ¶ 13, Ex. A, Settlement., Section I(V)(a)-(b).  Members of one or both of the Settlement Classes are "Settlement Class Members." *Id.*, at Section I(V)(c).

### B.  Settlement Class Periods

The operative settlement periods for each class are: October 19, 2012 through the earlier of preliminary approval of the settlement or November 1, 2018, the "FCRA Settlement Period;" October 19, 2013 through the earlier of preliminary approval of the settlement or November 1, 2018, the "California Settlement Period." (Szamet Decl., ¶ 15, Settlement Agreement, Section I(W)(a)-(b)).

### C.  Settlement Fund

The total amount of the settlement shall be $80,000 (the "Maximum Settlement Amount"), without reversion or discount.  The projected allocation of funds from the Maximum Settlement Amount is as follows:

| Category | Amount |
|---|---|
| Class Counsel Fees (33.33%): | $26,666.67 |

4

| | |
|---|---|
| Claims Administration Fees (Estimated): | $11,000.00 |
| Litigation Costs and Expenses (not to exceed) | $9,000 |
| Class Representative Enhancement: | $3,000.00 |
| Net Settlement Amount: | $30,333.33 |
| Maximum Settlement Amount: | $80,000 |

Each Settlement Class Member that does not opt out shall be a "Participating Class Member."  Settlement Agreement, Section I(R).

The Net Settlement Amount to each Participating Settlement Class Member will be determined based upon two components: an amount for the FCRA claim and a separate amount for the wage statement claim. (Szamet Decl., ¶ 16). For the FCRA claim, the Parties agree that each of the approximately 189 FCRA Class members shall each receive $50. (Szamet Decl., ¶ 16, Settlement Agreement, Section IX(A)).  This means that approximately $9,450 of the Net Settlement Amount is allocated to the FCRA Class. *Ibid.*  The remainder of the Net Settlement Amount, estimated to be $20,883.33, shall be divided pro rata to California Settlement Class members based upon the estimated number of applicable pay periods that she/he worked as compared to the total number of Eligible Pay Periods that each Settlement Class member has worked in California at any time during the California Settlement Period. (*Ibid.*).

If no objection to the Settlement is made, the funds used for the Maximum Settlement Amount shall be paid to the Claims Administrator by Defendant in a lump sum within fifteen (15) days of the final approval of the Settlement. (Szamet Decl., ¶ 17, Settlement Agreement, Section IX(B)).

Any uncashed funds shall be transmitted to the Department of Industrial Relations Unpaid Wage Fund in the name of the Settlement Class Member so that all Settlement Class Members will have the opportunity to claim their payments from the Department of Industrial Relations after the expiration of the settlement checks. (Szamet Decl., ¶ 18, Settlement Agreement, Section IX(B). The Parties agree to coordinate their efforts to seek Court approval for such an escheatment process of uncashed funds. (*Ibid.*). If for some reason the Court does not approve the escheatment of

uncashed funds, the Parties agree to proceed pursuant to California Code of Civil Procedure Section 384(b)(3) with 25% to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund, 25% to the State Treasury for deposit in the Equal Access Fund of the Judicial Branch, and 50% to Bet Tzedek Legal Services. (*Ibid.*).

## IV.   **PRELIMINARY SETTLEMENT APPROVAL PROCESS**

A class action may not be dismissed, compromised, or settled without court approval.  Fed. R. Civ. P. ("FRCP") 23(e).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

Judicial proceedings under the FRCP have led to a defined procedure and specific criteria for settlement approval in class actions that are thoroughly described in the Manual for Complex Litigation (Fourth) ("*Manual* (Fourth)") § 21.62 (2004).  FRCP 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litigation (Third) § 30.41 at 236-37 (1995)).

> [T]he Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.  *See Alvarado v. Nederend*, 2011 WL 90228, at *5 (E.D. Cal. Jan. 11, 2011) (granting preliminary approval of settlement in wage and hour class action); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008); *Collins v. Cargill Meat Solutions Corp*., 2011 WL 837140, at *6 (E.D. Cal. Mar. 9, 2011) (granting preliminary approval of settlement in wage and hour class action); Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation by the court of the fairness of the proposed settlement, including a determination that there are no obvious deficiencies such as indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys. . . .").  Closer scrutiny is reserved for the final approval hearing.

*Harris v. Vector Marketing Corp.*, 2011 WL 1627973, *7 (N.D. Cal. Apr. 29, 2011); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1026 (9th Cir. 1998) (the court's task is to "balance a number of factors," including "the strength of the plaintiffs' case," "the risk, expense, complexity, and likely duration of further litigation," "the risk of maintaining class action status throughout the trial," "the extent of discovery completed and the stage of the proceedings," and "the amount offered in settlement"); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (same).  This procedure for preliminary approval of settlement agreements, endorsed by the leading class action commentator, Professor Newberg, and commonly used by Federal courts, safeguards class members' procedural due process rights and enables a court to fulfill its role as the "guardian" of the class.  *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* ("*Newberg*"), § 11.22 (4th ed. 2002).

The approval or rejection of the proposed settlement is committed to the Court's sound discretion.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (in the context of a class action settlement, an appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon a strong showing of clear abuse of discretion) (internal quotations omitted).

The Court's preliminary evaluation of the proposed settlement purports to determine whether it is within the permissible "range of reasonableness" and thus, whether the notice to the class is appropriate.  4 *Newberg* § 11.25-26; Manual for Complex Litigation (Third) ("*Manual (Third)*") § 30.41 (1995).

### A. Provisional Certification of the Settlement Classes

The Parties request that the Court provisionally certify the proposed Settlement Classes (as defined in the Parties' Settlement Agreement).  Provisional class certification is appropriate at the preliminary approval stage where, as here, the proposed Settlement Classes have not previously been certified by the Court, and the requirements for certification are met.  4 *Newberg* §§ 11.22, 11.27.  The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only.  *See Hanlon*, 150 F.3d at 1019.  Pragmatically, provisional class certification facilitates distribution of notice on the terms of the proposed settlement and the date and time of

7

the final approval hearing to all settlement class members. *See Manual* (Third) § 30.41.

The additional rulings sought by this motion—approving the form, content, and distribution of the Settlement Documents and scheduling a Final Approval Hearing—facilitate the settlement approval process, and are traditionally made at this preliminary approval stage. 4 *Newberg* § 11.26.

### B. Settlement Administration Timeline

The Settlement Agreement sets forth a detailed proposed sequence for the relevant dates and deadlines embodied in the settlement, conditioned upon this Court granting preliminary approval of the proposed settlement. The schedule is outlined in the Proposed Order Preliminarily Approving Settlement filed herewith.

| | |
|---|---|
| Deadline to provide Class List to the Settlement Administrator. | Twenty-One (21) days after Preliminary Approval. |
| Deadline for Settlement Administrator to mail Notice of Class Action Settlement to all Class Members via regular first-class U.S. Mail. | Within fifteen (15) calendar days after receiving the Class List, the Settlement Administrator will mail Notice of Class Action Settlement. |
| Deadline to submit disputes to workweek information provided on the Notice of Class Action Settlement. | No later than forty-five (45) days after the mailing of the Notices of Class Action Settlement. |
| Deadline to Request Exclusion. | Requests for exclusion from the Class Action Settlement must be submitted by the Response Deadline, which is forty-five (45) calendar days from the initial mailing of the Notice of Class Action Settlement, unless the sixtieth (60th) day falls on a Sunday or a Federal holiday, in which case the Response Deadline will be extended to the next day. |
| Deadline for Objections. | Objections must be submitted by the Response Deadline, forty-five (45) days after Notice of Class Action Settlement is mailed by the Claims Administrator. |
| Deadline for Plaintiff to file motion for final approval of settlement and application for attorneys' fees and costs, and class representative's enhancement payment. | At least Fifteen (15) days prior to Final Approval Hearing set by the Court. |

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.   <u>PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE</u>

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See* 4 *Newberg* § 11.41 (and cases cited therein); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Preliminary evaluation of class action settlements is intended to determine only whether the proposed settlement is within the range of possible approval or whether it is potentially fair, as the Court will make a final determination on adequacy at the final approval hearing.  *See Acosta v. Trans Union LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007); *In re Traffic Exec. Ass'n*, 627 F.2d 631, 633-34 (2d Cir. 1980); 4 *Newberg* § 11.25.

The Court has broad powers to determine whether a proposed settlement is fair under the circumstances of the case, *see Torrisi*, 8 F.3d at 1375 ); *Acosta*, 243 F.R.D. at 384) (citing *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977)), and preliminary approval of a settlement agreement should be granted unless there are reasons to doubt its fairness or there are other "obvious deficiencies" in the proposed settlement making it clear it would not ultimately weather a final approval hearing.  *See In re Prudential Securities, Inc.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citing Manual (Third) § 30.41 at 237.

To make this fairness determination, courts consider several relevant factors, including the strength of the plaintiff's case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, as well as the experience and views of counsel. *Torrisi*, 8 F.3d at 1375.  This list of factors is not exclusive, however, and the court may balance and weigh factors differently depending on the factual circumstances of each case. *See id.* at 1376.

The *Manual* summarizes the preliminary approval criteria as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and

9

> appears to fall within the range of possible approval**,** the court should direct that notice . . . be given to the Class Members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual* (Third) § 30.41; *see also* 4 *Newberg* § 11.25.

When examining settlement agreements, a presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.  4 *Newberg* § 11.41.

Here, the Parties have conducted informed, good faith, arms-length negotiations, with adequate access to necessary information, and did so with the assistance of a highly regarded and experienced mediator. (Szamet Decl., ¶ 20).

Proposed Class Counsel did sufficient investigation and discovery to be able to intelligently assess the viability of the claims, including the strengths and weaknesses of the case. (Szamet Decl., ¶ 21).  The proposed settlement falls well within the range of reasonableness, as the terms of the agreement are fair and adequate and provide a good result for Plaintiff and the Settlement Class Members, especially considering the complexities of the case, the substantial risk inherent in non-certification, the risks of not prevailing on the merits at trial, and the serious risk that even if Plaintiff prevailed at trial the damages could be greatly reduced. (Szamet Decl., ¶ 22).

Proposed Class Counsel is experienced in class action matters and is capable of assessing the strengths and weaknesses of the claims and the benefits of the proposed settlement under the circumstances of the case and in the context of a private, consensual agreement. (Szamet Decl., ¶ 23). Proposed Class Counsel believes the settlement offers a fair result to Settlement Class Members, commensurate with the risks of further litigation.

Finally, proposed Class Counsel is not aware of any objectors; if there are any potential objectors, they will have an opportunity to come forward during the notice period. (Szamet Decl., ¶ 24).

Accordingly, preliminary approval of the settlement is appropriate. (Szamet Decl., ¶ 25).

///

**A. The Terms of the Proposed Settlement Provide Reasonable Compensation for Plaintiff's and Settlement Class Members' Damages**

Ultimately, "a settlement should stand or fall on the adequacy of its terms." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981). The Settlement Agreement reflects an excellent compromise.

**1.    The Settlement Provides a Significant Monetary Benefit to Class Members**

During the applicable FCRA Settlement Period, October 19, 2012 through November 1, 2018, it is estimated there are approximately 189 class members and during the FCRA Settlement Period. (Szamet Decl., ¶ 26).   During the applicable California Settlement Period, October 19, 2013 through November 1, 2018, it is estimated there are 480 class members. (Szamet Decl., ¶ 26). The Parties have agreed to settle this matter for a sum total of $80,000, without reversion or discount. (Szamet Decl., ¶ 27).

Each Settlement Class Member who wishes to become a Participating Settlement Class Member (entitling such Participating Settlement Class Member to receive a settlement payment under the Settlement Agreement) will receive a payment—based upon whether that Participating Settlement Class Member is eligible under one or both Settlement Classes—based on a formula calculating the amount for the FCRA claim ($50 per FCRA Class member) and a separate amount for the California claims as set forth in the Settlement Agreement. (Szamet Decl., ¶ 28, Settlement Agreement, Section IX(A)).  Based on the nature of the alleged violations, proposed Class Counsel believe these amounts to be reasonable. (Szamet Decl., ¶ 29).

In addition, Defendant has agreed to separately pay reasonable costs necessary to administer the settlement as detailed in the Settlement Agreement. (Szamet Decl., ¶ 30, Settlement Agreement, Section XI).

**2.    The Settlement's Financial Terms Reflect a Fair Discount From the Maximum Value of the Case Based on litigation Risks**

A discount on the maximum value of the case is warranted in light of the significant risks going forward. (Szamet Decl., ¶ 30). Moreover, the settlement will be fully paid, without reversion

11

or discount, and does not involve coupons, gift certificates, or vouchers of any kind. (Szamet Decl., ¶ 30).

Plaintiff's first and second causes of action seek statutory damages between $100 and $1,000 for each willful violation of the FCRA, counting § 1681(b)(2)(A)(i) and (ii) as separate violations because Plaintiff claims that they create different substantive rights. Plaintiff's third and fourth causes of action seeks unpaid overtime wages for Defendant's alleged failure to properly blend non-discretionary bonus pay into the California Class Members' effective rate of pay, and derivative waiting time penalties. See Cal. Labor Code §§ 201, 202, 203, 510, 1194, and 1199.

Defendant's defenses to liability and certification are an important basis for validating the reasonableness of the settlement amount. For example, Defendant contends that Plaintiff cannot allege Article III standing to assert his FCRA claims. In *Spokeo, Inc. v. Robins*, the Supreme Court explained that "a bare procedural violation [of a statute], divorced from any concrete harm, cannot satisfy the injury-in-fact requirement of Article III." 136 S. Ct. 1540, 1548 (2016). Last year, in applying *Spokeo* to a complaint alleging, as here, that a defendant violated the FCRA by including a liability waiver in its disclosure and authorization form, the Ninth Circuit tested the allegations in the complaint to discern whether it could be "fairly infer[red] that [the plaintiff] was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure, as required in the statute." *Syed v. M-I, LLC*, 853 F.3d 492, 499-500 (9th Cir. 2017). Defendant contends that although Plaintiff alleges that he was "confused" by Defendant's Background Check form, Plaintiff did not allege that he "would not have signed" the authorization form absent the liability waiver.

Defendant also asserts that Plaintiff cannot show that Defendant's alleged violation of the FCRA was "willful" as required for recovery. *See* 15 U.S.C § 1681n(a)(1). Defendant also argues that Plaintiff's claim for violating the FCRA's proper authorization requirement does not state a claim and is duplicative of his first FCRA claim. *See Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2016 WL 1071570, at *12 (E.D. Va. Mar. 15, 2016) ("[T]he Standard Disclosure Form does not 'consist solely of the disclosure,' and therefore does not satisfy § 1681b (b)(2)(A)(i).

12

However, the Defendant's Background Check Form nonetheless clearly communicates to the applicant that consumer reports will be procured for employment purposes, and explicitly obtains the applicant's permission for the dissemination of those reports. Thus, the Background Check, or doisclosure, Form contains a clear and adequate written authorization and satisfies § 1681b(b)(2)(A)(ii).").

With respect to Plaintiff's claim under California Labor Code, Defendants contend that it complied with all California overtime requirements, and that all California Class Members were properly and adequately paid all wages.

With respect to class certification issues, Defendant contends that both class definitions are overbroad. A class can only be certified if it is defined so that every class member has Article III standing. *See Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 594 (9th Cir. 2012) ("[N]o class may be certified that contains members lacking Article III standing."); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 988 (9th Cir. 2011) ("[T]he district court must consider how best to define the class(es) to ensure that all class members have standing to seek the requested relief."). Defendant contends that Plaintiff's FCRA Class is not limited to individuals who were confused by the inclusion of a liability waiver in the disclosure form and would not have signed an authorization but for its inclusion. Defendant further contends that Plaintiff's FCRA Class goes back five years, but the FCRA provides two statutes of limitations—one of which only goes back 2 years—and mandates that each plaintiff be bound by "the earlier of" the two. 15 U.S.C. § 1681p. Defendant contends that each FCRA Class member who filled out a FCRA disclosure with a liability waiver more than two years before the filing of the complaint would thus be subject to a statute of limitations defense. Further, Defendant contends that the applicability of an individualized statute of limitations defense—which requires a separate inquiry into when each class member subject to the defense personally discovered the alleged violation—means that a class action is not superior to other methods of adjudication. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 320 (4th Cir. 2006) (where statute of limitations defense cannot be resolved on a class-wide basis, class certification is inappropriate). Similarly, Defendant contends that the California Class is overbroad and uncertifiable as the alleged claims only arise out of a very limited number of pay periods where

13

bonus or "PSP" pay was in fact earned in overtime hours, creating substantial individualized inquiries which would predominate over any common issues among class members.

Using the full value of the underlying claims, as described above, Plaintiff felt a steep discount was warranted. (Szamet Decl., ¶ 31). Plaintiff factored in the risks associated with class certification and the strength of Defendant's defenses when reaching this settlement. (Szamet Decl., ¶ 31).

### B. The Settlement is the Product of Serious, Arm's-Length, Informed Negotiations and There Are No Indications Present to Doubt Its Fairness

The Parties engaged in arm's-length, informed negotiations during the course of this litigation in order to reach the proposed settlement. (Szamet Decl., ¶ 10).

The judgment of experienced counsel is an important factor in a court's determination that negotiations were fair and informed. Absent fraud and collusion, the court may not only *rely* upon the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Officers for Justice v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Furthermore, the involvement of an objective, third-party neutral tends to demonstrate the presence of arm's-length negotiations. *See Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 262-63 (S.D.N.Y. 1998). Proposed Class Counsel has a great deal of experience litigating and evaluating class action cases. (Szamet Decl., ¶¶ 23 and 58-59). Defendant's counsel are also experienced in defending class actions of this type. (Szamet Decl., ¶ 23).

Proposed Class Counsel have conducted significant investigation and discovery into the facts of this class action case. (Szamet Decl., ¶¶ 11 -12). The settlement negotiations were guided by Jeffrey Krivis, a preeminent mediator in the field. (Szamet Decl. ¶ 9).

Based on this investigation and evaluation, proposed Class Counsel firmly believes the settlement, on the terms set forth in the Settlement Agreement, is fair, just, reasonable, adequate, and in the best interest of the Settlement Classes in light of all known facts and circumstances, including the risk of significant delay, the risk the Settlement Classes will not be certified by the Court, defenses asserted by Defendant, and numerous potential appellate issues. Preliminary

14

approval of the Settlement Agreement is appropriate.  Szamet Decl., ¶¶11-12).

## VI.   PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE

The Plaintiff may, at the preliminary approval stage, request that the Court provisionally approve certification of the class for settlement purposes, conditioned upon final approval of the settlement.  4 *Newberg* § 11.26 (the court's findings "at a preliminary hearing or conference concerning a tentative settlement proposal . . . may be set out in conditional orders granting tentative approval to the various items….  These conditional rulings may approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.").  Before a court evaluates a settlement under FRCP 23(e), it must determine that the settlement classes satisfy the requirements enumerated under Rule 23(a) and at least one of the requirements in Rule 23(b).  *In re UTStarcom, Inc. Sec. Litig.*, No. C04-04908 JW, 2010 WL 1945737, at * 3 (N.D. Cal. May 12, 2010).  As discussed below, the proposed Settlement Classes meet all of the requirements of certification for settlement purposes.

### A.  FRCP 23(a) Requirements for Class Certification Are Met

Preliminary approval of the settlement is justified because the class certification requirements exist for the Settlement Classes.  Rule 23(a) provides the factors that the Court looks to for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  All four of these elements are satisfied by the proposed Settlement Classes for settlement purposes.

#### 1.  Numerosity

If the class is sufficiently large that joinder of all members is impractical or that individual joinder is impractical, the numerosity requirement is met.  *See Hanlon*, 150 F.3d at 1019.

During the applicable FCRA Settlement Period, it is estimated there are approximately 189 class members, and during the California Settlement Period, it is estimated there are 480 class members.  "There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied."  *Speaks v. U.S. Tobacco Coop., Inc.*, 324 F.R.D.

15

112, 135-36 (E.D.N.C. 2018).  However, Courts have found that classes around this size meet the numerosity requirement.  *See, e.g.*, *Pataky v. Brigantine, Inc.*, No. 17-cv-00352-GPC-AGS 2018 WL 3020159, at *4 (S.D. Cal. June 19, 2018) (finding that a class of "nearly 800 Settlement Class Members" satisfied numerosity for class certification for settlement purposes.)  Therefore, for the proposed Settlement Classes, joinder of individual claims would be impractical and the numerosity requirement is satisfied for settlement purposes. (Szamet Decl., ¶ 32).

### 2.  Commonality

The commonality requirement of Rule 23(a) is met if there are common questions of fact and law among the class.  *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class").

Here, the Settlement Class Members all seek the same remedies under identical law and the same theories of recovery. (Szamet Decl., ¶ 33).  All Settlement Class Members' claims relate to Defendant alleged violation of the Fair Credit Reporting Act for failure to make proper disclosures and obtain proper authorization, and alleged failure to pay overtime wages in accordance with California. (Szamet Decl., ¶ 33).

The settlement compensates Settlement Class Members for these identical claims.  Szamet Decl., ¶ 34.  Under these circumstances, the commonality requirement is satisfied for settlement purposes.  *Hanlon*, 150 F.3d at 1019-20.

### 3.  Typicality

The typicality requirement of Rule 23(a) is met if the claims of the plaintiff are typical of each class, though "they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Factual differences may exist between the classes and the plaintiff, provided the claims arise from the same events or course of conduct and are based upon the same legal theories.  *Welmer v. Syntex,* 117 F.R.D. 641, 644 (N.D. Cal. 1987).  Moreover, the typicality and commonality elements of Rule 23(a) "tend to merge" because both assess whether the claims of a class and the plaintiffs are sufficiently interrelated to make class treatment appropriate.  *Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

16

Here, Named Plaintiff's claims are not only typical of those of all Settlement Class Members—they are identical. (Szamet Decl., ¶ 35).  Plaintiff alleges that Defendant included a liability waiver in a form that contained the disclosure and authorization permitting a background check as well as a waiver of his rights to sue. (Szamet Decl., ¶ 35). This is the same claim alleged on behalf of all FCRA Class members. (Szamet Decl., ¶ 35). The same analysis is true of Plaintiff's claim regarding the payment of overtime wages to California Class members. (Szamet Decl., ¶ 35). Plaintiff satisfies the typicality requirement for settlement purposes because his claims arise from the same factual basis and are based on the same legal theories as those applicable to all Settlement Class Members.  *Welmer,* 117 F.R.D. at 644.

### 4.  Adequacy of Representation

Rule 23(a)(4) requires that the plaintiff and class counsel fairly and adequately represent and protect the interests of each class.  If the plaintiff and class counsel have no interests adverse to the interest of the proposed class members and are committed to vigorously prosecuting the case on behalf of the classes, then the adequacy requirement is met.  *Hanlon*, 150 F.3d at 1020; *see also Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).

Plaintiff has interests directly aligned with all Settlement Class Members and has prosecuted this case on their behalf.  He has no apparent conflicts with Settlement Class Members.  He has demonstrated his commitment to prosecute this litigation on their behalf through its conclusion. (Szamet Decl., ¶ 36).

Under the proposed settlement, Plaintiff requests a small enhancement payment—$3,000—for his time and efforts, including assisting proposed Class Counsel with factual issues surrounding the case, participation at the mediation and potential exposure to costs if he did not prevail. (Szamet Decl., ¶ 37).  This award represents a small percentage of the total value of the settlement consideration, and therefore does not constitute a sufficient conflict of interest to foreclose fulfilling the adequacy requirement. (Szamet Decl., ¶ 38).

Additionally, proposed Class Counsel are experienced litigators.  As evidenced by the declaration of Kelsey M. Szamet, proposed Class Counsel have substantial experience prosecuting complex class action cases, both in the consumer and employment contexts.  As such, there is no

17

conflict of interest between the Plaintiff, proposed Class Counsel, and the Settlement Class Members, and the adequacy element is met. (Szamet Decl., ¶ 39).

### B. FRCP 23(b)(3) Requirements for Class Certification Are Met

The proposed Settlement Classes also meet the requirements of Rule 23(b)(3) for settlement purposes because: (1) common questions predominate over questions that affect individual members; and (2) class resolution is superior to other available methods of adjudication. When assessing predominance and superiority, the Court may consider that the classes will be certified for settlement purposes only. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-620 (1997). A showing of manageability at trial is unnecessary; the dispositive inquiry at this stage is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 618-20, 623; *see also Hanlon*, 150 F.3d at 1022.

### 1. Predominance

The claims of the Settlement Classes here are sufficiently cohesive to warrant certification. For settlement purposes, common questions of fact and law affecting proposed Settlement Class Members in this case predominate over questions that may affect individual members.   In analyzing predominance, as with commonality, it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions. *Hanlon*, 150 F.3d at 1022. The test is whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. Here, the proposed Settlement Classes are sufficiently cohesive because all Settlement Class Members share a common nucleus of facts and potential legal remedies—the same facts and law govern their claims. All of the Settlement Class Members seek statutory damages and penalties based on the same allegations. As a result, common questions of law and fact predominate here.

### 2. Superiority

Particularly in the settlement context, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. Here, as in *Hanlon*, the alternative method of resolution is hundreds of individual claims

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

for relatively small amounts of damages, proving uneconomical for potential plaintiffs because the cost of litigation dwarfs potential recovery. *Id*.

## VII.   THE PROPOSED CLASS NOTICE IS APPROPRIATE

### A.  The Class Notice Satisfies Due Process

The draft notice ("Notice") apprises all Settlement Class Members of the litigation and their options under the settlement. (Szamet Decl., ¶ 40, Ex. B). This proposed Notice meets the standards set forth in Rule 23(c)(2)(B) for classes certified under Rule 23(b)(3). The Notice is being provided directly to the Settlement Class Members based on the class list to be provided by Defendants. (Szamet Decl., ¶ 41, Ex. A, Section VIII).

### B.  The Proposed Notice Is Accurate and Informative

The proposed Notice provides information on the meaning and nature of the proposed settlement and Settlement Classes, the terms and provisions of the Settlement Agreement, the relief the settlement will provide Settlement Class Members, the amount of the proposed enhancement payment to Plaintiff, the amount of attorneys' fees and costs that proposed Class Counsel may request, and the date, time, and place of the Final Approval Hearing. The Notice clearly and accurately describes the nature of the action, the definition of the Settlement Classes, and the class claims. (Szamet Decl., ¶ 42, Ex. B). The Notice also informs Settlement Class Members that they may file objections to the settlement as required by Rule 23(e)(4)(A) and enter an appearance through counsel if they so desire, indicates that the Court will exclude from the Settlement Classes any member who requests exclusion, and explains the binding nature of class judgment under Rule 23(c)(3). *Id.*

Further, the Notice fulfills the requirement of neutrality in class notice. *See* 3 *Newberg on Class Actions*, § 8:12 (5th ed. 2018) ("[C]ourts generally insist that the notice be presented in "objective, neutral terms."). It summarizes the proceedings to date, Plaintiff's allegations, and the terms and conditions of the Settlement Agreement in an informative and coherent manner, in compliance with the *Manual's* statement that "the notice should be accurate, objective, and understandable to Class Members. . . ." *Manual* (Third) at § 30.211. The Notice clearly states that the settlement does not constitute an admission of liability by Defendant and recognizes that the

19

1   Court has not ruled on the merits of the action.  It also states that the final settlement approval

2   decision has yet to be made.  Accordingly, the Notice complies with the standards of fairness,

3   completeness, and neutrality required of a settlement class notice disseminated under authority of

4   the Court.  *See* Fed. R. Civ. P. 23(c)(2), 23(e); 2 *Newberg* §§ 8.21, 8.39; *Manual* (Third) §§ 30.211,

5   30.212.

6   **VIII.   PLAINTIFF REQUESTS A FINAL APPROVAL HEARING**

7        The last step in the settlement approval process is the formal hearing, at which the Court

8   may hear all evidence and argument necessary to evaluate the settlement.  At that hearing,

9   proponents of the settlement may explain and describe its terms and conditions and offer argument

10   in support of settlement approval, and members of the Settlement Classes who have filed a valid

11   and timely objection, or their counsel, may be heard in support of or in opposition to the Settlement

12   Agreement.   Plaintiff recommends that the hearing be held approximately 80 days after

13   preliminary approval by the Court, and at least 30 days after the Notice's response deadline, which

14   Plaintiff believes would give the Parties sufficient time to complete the administration process and

15   the notice program.  Before the notice period begins, Plaintiff's Counsel will brief and file its

16   application for an award of attorneys' fees and costs, and for the Plaintiff's enhancement award.

17   **IX.   CONCLUSION**

18        The settlement is fair and reasonable and all of the requirements for preliminary approval

19   are met.  The Court is therefore requested to grant this motion and enter an order in the form

20   submitted concurrently herewith.

21    DATED: Janaury 10, 2019                    KINGSLEY & KINGSLEY, APC

22

23                                  By:  /S/KELSEY M. SZAMET
                                        _____
24                                       Eric B. Kingsley
                                        Kelsey M. Szamet
25                                       David Keledjian
                                        Attorneys for Plaintiff CHRISTOPHER MASTON
26                                       and the proposed classes

27

28